IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: | * |
| | *  CASE NUMBER |
| HOLIDAY ISLE, LLC, | *  10-03365 |
| | * |
| Debtor. | * |

## PETITION TO SELL UNIT 407 OF HOLIDAY ISLE CONDOMINIUMS FREE AND CLEAR OF LIENS AND TO USE CASH PROCEEDS IN SPECIFIED MANNER

Debtor, Holiday Isle, LLC, petitions the Court for authorization to sell Unit 407 of Holiday Isle Condominiums located at 1601 Bienville Boulevard, Holiday Isle Condominium, Dauphin Island, Alabama 36528, to Susan Veasey, free and clear of liens, for $329,000.00, and for authorization to use the proceeds of the sale to pay Debtor's share of closing costs including those costs and expenses appearing on the Purchase Contract, to pay the Revenue Commissioner Debtor's share of ad valorem taxes on said condominium, to pay 85% of the net cash proceeds to RBC Real Estate Finance Inc. to be applied to the debt owed by Debtor that is secured by all condominium units owned by Debtor at Holiday Isle Condominiums, to pay into escrow from Debtor's 15% of the net proceeds the Chapter 11 Quarterly Fees calculated on the cash portion of the sales proceeds, and to retain the balance, if any, of the cash proceeds to be used for operating expenses and in support Debtor-in-Possession states the following:

1. On July 23, 2010, Debtor filed a Petition for Relief under Chapter 11 of the U.S. Bankruptcy Code (the "Filing Date"). The Debtor is serving as Debtor-in-Possession.

2. The Debtor continues to manage its property and operate its business as Debtor in Possession pursuant to Sections 1107 and 1108.

3. An Official Committee of Unsecured Creditors has not been appointed pursuant to Section 1102 of the Bankruptcy Code. No trustee or examiner has been appointed in this case.

4. Debtor is engaged in the business of selling the condominium units it owns at the Holiday Isle Condominiums at Dauphin Island, Alabama. Debtor is serving as the Debtor-In-Possession and has all of the rights and powers of a Trustee under the Bankruptcy Code.

5. At the time of the filing of Debtor's Chapter 11 proceeding, Debtor owned 81 condominium units located at Holiday Isle Condominiums, 1601 Bienville Boulevard, Dauphin Island, Alabama 36528, subject to a first mortgage in favor of RBC Real Estate Finance Inc.

6. Debtor has received an offer to purchase Unit 407 of Holiday Isle Condominiums for the sum of $329,000.00 from Susan Veasey, free and clear of liens. A copy of the Purchase Agreement is attached hereto.

7. From the sales proceeds, Debtor proposes to pay its share of closing costs, to pay the Revenue Commissioner Debtor's share of the ad valorem taxes on said unit, to pay 85% of the net cash proceeds to RBC Real Estate Finance Inc. to be applied to the debt, to pay into escrow from the remaining 15% of the net proceeds the Chapter 11 Quarterly Fees calculated on the cash portion of the sales proceeds, and to retain the balance of the cash proceeds to be used for operating expenses, subject to the lien of RBC Real Estate Finance Company Inc. Debtor's share of said net proceeds will be used only in accordance with previous and future orders authorizing Debtor's use of cash collateral.

8. Debtor is of the opinion that the sale of said property under these circumstances and the use of the proceeds as described, is in the best interest of all creditors for that it will allow Debtor to continue to conduct business and generate revenues to fund its Chapter 11 Plan.

WHEREFORE, Debtor prays for an Order authorizing it to sell Unit 407 of Holiday Isle Condominiums located at 1601 Bienville Boulevard, Holiday Isle Condominium, Dauphin Island, Alabama 36528, to Susan Veasey, free and clear of liens, for $329,000.00 in accordance with the terms of the Purchase Agreement attached hereto, and for authorization to use the proceeds of the sale to pay Debtor's share of closing costs, to pay the Revenue Commissioner Debtor's share of the ad valorem taxes owed on said unit, to pay 85% of the net cash proceeds to RBC Real Estate Finance Inc. to be applied to the debt owed by Debtor secured by all condominium units owned by Debtor at Holiday Isle Condominiums, to pay into escrow from Debtor's 15% of the net proceeds the Chapter 11 Quarterly Fees calculated on the cash portion of the sales proceeds, and to retain the balance, if any, of the cash proceeds to be used for operating expenses and for such other and different relief as may seem and proper.

HOLIDAY ISLE, LLC

BY:/s/Paul Charles Wesch
THE MITCHELL COMPANY, INC.
By: Paul Charles Wesch
As Its Executive Vice-President
Its Managing Member

/s/Irvin Grodsky
IRVIN GRODSKY
Attorney for Debtor
Post Office Box 3123
Mobile, Alabama 36652
(251) 433-3657

## CERTIFICATE OF SERVICE

On this the 26th day of July, 2010, I hereby certify that the above and foregoing document has been served via United States Mail, properly addressed and first-class postage prepaid or court electronic mailing on the following:

Travis M. Bedsole, Jr., Esq.
Bankruptcy Administrator
Post Office Box 3083
Mobile, Alabama 36652-3083

/s/ Irvin Grodsky
IRVIN GRODSKY




# PURCHASE AGREEMENT

This contract constitutes the sole agreement between the parties hereto and any modifications of this contract shall be signed by all parties to this agreement. No representation, promise, or inducement not included in this contract shall be binding upon any party hereto. If you have any questions, seek legal and/or tax advice.

AGENCY DISCLOSURE: SELLER(S) INITIALS _____ BUYER(S) INITIALS __AI__

The listing company __The Mitchell Company, Inc__
(Two blocks may be checked)
☐ An agent of the seller.
☐ An agent of the buyer.
☐ An agent of both the seller and the buyer and is acting as a limited consensual dual agent.
☒ Assisting the ____ buyer ✓ seller as a transaction broker.

The selling company __The Mitchell Company, Inc__
(Two blocks may be checked)
☐ An agent of the seller.
☐ An agent of the buyer.
☐ An agent of both the seller and the buyer and is acting as a limited consensual dual agent.
☒ Assisting the ✓ buyer ____ seller as a transaction broker.

**BUYER'S OFFER** DATE __July 23, 2010__ _____ (AM/PM)

1. THE UNDERSIGNED, HEREINAFTER CALLED THE BUYER, HEREBY OFFERS TO BUY THE PROPERTY LOCATED IN __Dauphin Island__ ALABAMA, COMMONLY KNOWN AS __Holiday Isle Condominium__
AND LEGALLY DESCRIBED AS: __Holiday Isle Condominium #407__
SUBJECT TO ANY EXISTING BUILDING AND USE RESTRICTIONS, PREVIOUS MINERAL EXCLUSIONS, ZONING ORDINANCES AND EASEMENTS, IF ANY, FOR THE SUM OF __Three Hundred Twenty-Nine Thousand Dollars__
($ __329,000__ ) Dollars

2. THE TERMS OF THE PURCHASE SHALL BE AS INDICATED BY "X" BELOW, UNMARKED TERMS DO NOT APPLY. (IF FAIRHOPE SINGLE COLONY PROPERTY, A BILL OF SALE WILL BE PROVIDED IN LIEU OF WARRANTY DEED.)

**CASH** ☒ The full purchase price upon execution and delivery of a full Warranty Deed by the Seller. The Buyer shall pay closing fee and recording fee.

**NEW MORTGAGE** ☐ The full purchase price upon execution and delivery of a full Warranty Deed by the Seller contingent upon the Buyer's ability to obtain a ____ YEAR _____ TYPE mortgage in the amount of approximately $ _____ PLUS ☐ PMI, ☐ MIP, ☐ VA FUNDING FEE, ☐ CLOSING COST AT AN INTEREST RATE NOT TO EXCEED ____ % or market rate if not locked in at the time of application. THE APPRAISAL FEE, unless the offer is contingent on a professional inspection in paragraph 3, and CREDIT REPORT FEE, shall be paid by the Buyer at time of application unless otherwise agreed upon in writing by all parties. The Seller shall have the option to cancel this contract if the Buyer fails to apply for a mortgage loan within ____ business days after the date of acceptance of this offer. THIS OFFER IS CONTINGENT ON THE PROPERTY APPRAISING FOR AT LEAST THE PURCHASE PRICE. The Buyer shall pay all loan closing costs, unless otherwise noted, including prepaid items, unless not allowed by FHA/VA regulations. DISCOUNT POINTS TO BE PAID AS FOLLOWS: _____ . The Seller shall make repairs or replacements as required by appraisal, or for mortgage loan purposes, NOT TO EXCEED $ _____ , but not including possible repairs as may be required by paragraphs 4 and 8 below.

**EQUITY** ☐ Upon execution and delivery of a full Warranty Deed by the Seller, the Buyer shall pay the difference ☐ EXACTLY ☐ APPROXIMATELY $ _____ between the purchase price above and the unpaid balance of approximately $ _____ upon said mortgage, or Vendor's Lien which the Buyer agrees to assume and pay with monthly payments of approximately $ _____ including principal, interest and, if applicable, taxes, insurance and any mortgage insurance. Mortgage payment to be current at time of closing. The Buyer shall pay next payment due after closing upon said mortgage, or Vendor's Lien. The Buyer shall pay mortgage transfer fee, closing fee, recording fees and, if applicable, mortgage processing fees. The Seller shall transfer any escrow accounts to the Buyer in proper balance and pay any escrow shortage at closing. The Buyer shall reimburse the Seller at closing for escrow overage transferred to the Buyer. The Buyer shall furnish one (1) year hazard insurance policy in an amount at least equal to the mortgage being assumed. If approval for assumption is required, the Seller shall have the option to cancel this contract if the Buyer fails to request assumption package within ____ business days after the date of acceptance of this offer and apply for assumption approval immediately. Mortgage is being assumed ☐ WITH ☐ WITHOUT release of liability. If assumption is with release of liability, the seller shall pay recording fees for the release of liability and assumption agreement. If assumption is without release of liability, the Sellers are advised to seek legal counsel concerning their retained liability. If VA mortgage, it is being assumed ☐ WITH ☐ WITHOUT reinstatement of entitlement. The Buyer ☐ SHALL ☐ SHALL NOT provide a credit report satisfactory to and approved in writing by the Seller within ____ business days of acceptance of this agreement.

**VENDOR'S LIEN DEED** ☐ $ _____ upon execution and delivery of a full Warranty Deed by the Seller reserving a Vendor's Lien wherein the balance of $ _____ shall be payable in # ____/____ installments of $ _____ including interest at ____% per annum, the first payment to become due 30 days after _____ . No penalty for prepayment privileges. The Buyer to pay closing fees and recording fee. The Vendor's Lien ☐ SHALL ☐ SHALL NOT be assumable without written consent of the lien holder, and the Vendor's Lien/Note ☐ SHALL ☐ SHALL NOT contain a late charge provision of ____ % of an installment when paid more than ____ days after due date thereof. Set up fee and note collection fee, if any, to be paid by the ☐ BUYER ☐ SELLER. The Vendor's Lien shall require the Buyer to promptly pay ad valorem taxes and to furnish insurance coverage in an amount not less than Vendor's Lien retained on buildings and improvements, with standard mortgagees clause naming the Seller as a loss payee, with the Buyer to supply first year insurance policy at closing. The Buyer ☐ SHALL ☐ SHALL NOT provide a credit report satisfactory to and approved in writing by the Seller within ____ business days of the acceptance of this agreement.

3. BUYER IS AWARE that professional inspection(s) of home, structure and systems, and any other items of importance to the Buyer are available, by a representative of the Buyer's choosing. The sale ☐ IS ☐ IS NOT contingent on said inspection, satisfactory to the Buyer. If sale is contingent on said inspection, the Buyer agrees to pay for same, and if said inspection is found to be unsatisfactory to the Buyer, the Seller is to be notified in writing within ____ business days of acceptance of this agreement. Otherwise, this contingency will be considered removed at the expiration of such period. The Seller is not obligated to pay for any repairs recommended by such professional inspection, except as may be required by other provisions of this purchase agreement. If this offer is contingent on a professional inspection, the appraisal shall be ordered immediately upon the removal of this contingency.

4. THE BUYER accepts this property in its as is condition, except as may be specified herein. HEATING, COOLING AND AIR CONDITIONING EQUIPMENT INCLUDING ANY WINDOW UNITS, PLUMBING and ELECTRICAL SYSTEMS and all INCLUDED APPLIANCES shall be warranted by the Seller to be in working order at time of conveyance. The Buyer may be required to sign a final WALK-THRU/SYSTEMS CHECK INSPECTION FORM, indicating that the inspection was completed and that the property was acceptable, unless otherwise noted on such form. The Buyer understands that if an agent accompanies the Buyer on this final inspection it will be as a courtesy only and not as a person qualified to detect any defects.

5. Providing utility availability, if necessary, for any and all inspections is the responsibility of the ☐ BUYER ☐ SELLER.

6. A HOME WARRANTY, subject to limitations, exclusions and deductibles, to be ordered through _____ REALTORS, AT THE EXPENSE of the ☐ BUYER ☐ SELLER. The Buyer, has been notified of the benefits of having the premises covered by such warranty, and hereby declines such coverage if available. **Buyer's Signature:** _____

7. All improvements and appurtenances are included in the purchase price, including if now in or on the property, the following: lighting fixtures and their shades, ceiling fans, drapery hardware and curtain hardware, window shades and blinds, window and door screens, stationary laundry tubs, water heater, smoke detectors, carbon monoxide detectors, built-in security systems, TV antenna and satellite dish and complete rotor equipment, mailbox, remote control garage door opener(s), water pump and pressure tank, built-in kitchen appliances including garbage disposal, attached gas grill, awnings, all plantings, and heating and air conditioning equipment including any window units. The Seller shall provide to the buyer or selling broker at closing at least one (1) exterior door key to the main dwelling. Exceptions for leased equipment: _____

NO ITEMS OF PERSONAL PROPERTY SHALL BE TRANSFERRED TO THE BUYER UNLESS SPECIFICALLY ITEMIZED HEREIN.

# PURCHASE AGREEMENT (PAGE 2)

PROPERTY ADDRESS: 1601 Bienville Boulevard Unit 407, Dauphin Island, AL 36528

8. The Seller agrees to furnish at Seller's expense, an Alabama Wood Infestation Report from a bonded and licensed termite control company stating that a visual inspection of accessible areas of the dwelling and garage and/or carport and any detached buildings given value by appraisal indicates there is no visible sign of active infestation or damage by wood destroying insects or fungus. This is not a structural damage report nor a warranty as to the absence of wood destroying insects or fungus. If a lender requires a structural inspection due to a finding of previous or present infestation and/or damage, such inspection shall be at Seller's expense and shall be satisfactory to Buyer and lender; or if not required by lender, Buyer may order such structural inspection at Buyer's expense, satisfactory to Buyer. The current termite contract, if any, is to be transferred to the Buyer if allowed by termite company. If active infestation and/or fungus is reported, treatment of the entire dwelling may be required unless property is under a current termite contract in which case a re-treatment of the affected area will be permitted. If new construction, a soil treatment letter is acceptable in lieu of inspection.

9. ALL AD VALOREM TAXES, except on equity sales with escrow accounts, any Homeowners Association Fees, and any rents being collected from existing tenants to be prorated at time of closing. Subject to the terms of any existing lease, the lease agreements and security/damage deposits, if applicable, will be transferred to the Buyer at closing. NOTE: Taxes are prorated based upon current information furnished by the Revenue Commissioner's Office. Brokers and Agents cannot and do not assume any responsibility for any change, modification or adjustment to the current tax assessment by the Revenue Commissioner's Office.

10. Liens for public improvements shall be paid by the Seller without proration. Assessments for public improvements not yet a lien shall be assumed by the Buyer.

11. AN OWNER'S POLICY OF TITLE INSURANCE in the amount of the purchase price is to be furnished by the Seller. Risk of loss by fire or other casualty shall be on the Seller until title is conveyed.

12. A new survey ☐ SHALL ☐ SHALL NOT be provided at the expense of the ☐ BUYER ☐ SELLER.

13. SALE TO BE CLOSED within _____ days after all necessary documents are ready, no sooner than _____, _____, nor later than _____.

TITLE TO BE TAKEN IN THE NAME(S) of Susan Veasey
☐ WITH ☒ WITHOUT Right of Survivorship.

14. A FURTHER PERIOD OF THIRTY (30) DAYS shall be allowed for closing if: (A) the closing is delayed by reason of title defects which can be readily corrected, or (B) the terms of purchase requires a new mortgage or lender approval for assumption, and the lender issues a commitment no later than the date in paragraph 13 above, but is delayed in consummating the mortgage.

15. POSSESSION TO BE GIVEN ☒ AT CLOSE ☐ _____ DAYS AFTER CLOSE OF SALE, AT _____ (AM/PM) ☐ WITH ☐ WITHOUT payment of rent by the Seller for any portion of property occupied by the Seller prior to this date and paid as follows:

16. FOR VALUABLE CONSIDERATION, the Buyer gives the LISTING COMPANY aboved named until _____, _____ (AM/PM) to obtain the written acceptance of this offer and agrees that this offer, when signed will constitute a binding agreement between the Buyer and the Seller. Buyer deposits $_____ in the form of _____ evidencing the Buyer's good faith to be deposited in escrow by said SELLING COMPANY upon acceptance of offer (cash shall be deposited immediately), and to be applied to the purchase price. If this offer is not accepted or the title is not marketable, or if the terms of purchase are contingent upon ability to obtain lender approval or Vendor's lien approval or other contingencies as specified which cannot be met, this deposit to be refunded, otherwise to be retained. In the event of default by the Buyer, all deposits made hereunder may be forfeited as liquidated damages at the Seller's election or alternatively, the Seller may retain such deposits as part payment of the purchase price and pursue his legal or equitable remedies hereunder against the Buyer. In the event this sale does not close, a separate mutual release signed by all parties to this contract will be required before any funds will be disbursed. In the event of a dispute, the holder of the escrowed funds may interplead funds into the appropriate court. In the event an offer or counteroffer is not accepted, earnest money shall be returned to the Buyer without a signed release.

17. THE PURCHASE PRICE AND TERMS OF THIS SALE MAY BE DISCLOSED after closing to the members and affiliate members of the Mobile Area Association of REALTORS, Inc., or the GULF COAST MLS, INC., for use in the ordinary conduct of their business. Real estate brokers/agents may benefit financially as a result of recommending real estate related services to clients and customers. REAL ESTATE AGENTS ARE NOT PRINCIPALS and are not be held liable for any conditions or non-performance of this agreement nor have they given any legal or tax advice.

18. Addendums marked are included as part of this agreement: LEAD-BASED PAINT DISCLOSURE____, OTHER(S) _____

19. Other provisions: Buyer to pay Capital Contribution to HOA at closing *7278.98
Buyer to pay monthly HOA fees - current month pro-rated and following month.

20. THE BUYER ACKNOWLEDGES RECEIPT of a copy of this Agreement and attached addendums, if any, which are made part of this Purchase Agreement.

Buyer X _Susan Veasey_   Print Name _Susan Veasey_   Buyer's SSN _____
Buyer X _____   Print Name _____   Buyer's SSN _____

Buyer's Address _____ Phone: (Res) _____ (Off) _____
Witness X _____ Selling Agent _____ Phone: (Res) _____ (Off) _____

## SELLERS ACCEPTANCE OF OFFER

21. THE ABOVE OFFER IS HEREBY ACCEPTED _____ Date: _____, _____ (AM/PM)

IN THE EVENT A COUNTEROFFER is made, it shall expire on _____, _____ (AM/PM) if the Buyer has not given prior written acceptance.

THE SELLER ACKNOWLEDGES RECEIPT of a copy of this Agreement and attached addendums, if any, which are made part of this Purchase Agreement.

Seller X _[signature]_   Print Name _____   Seller's SSN _____
Seller X _[signature]_   As Title is Held Print Name _____   Seller's SSN _____

Seller's Address _____ Phone: (Res) _____ (Off) _____
Witness X _____ Listing Agent _____ Phone: (Res) _____ (Off) _____

## BUYER'S ACCEPTANCE OF COUNTEROFFER
Date: _____, _____ (AM/PM)
18. The Seller's counteroffer as detailed in #21 above is hereby accepted. Provisions of the original offer not changed by the counteroffer remain in effect.

Buyer X _____ Witness _____
Buyer X _____ Witness _____